**ASPEN TECHNOLOGY, INC., Appellant**

v.

**Abe SHASHA, Appellee.**

**In re Aspen Technology, Inc., Relator.**

**Nos. 14–07–00303–CV, 14–07–00469–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 27, 2008.

Laura Gibson for Aspen Technology, Inc.

Mark G. Lazarz, Michael Todd Slobin, for Abe Shasha.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

An employer and its employee entered into two arbitration agreements—one in which they did not specify the arbitration rules, arbitration site, or number of arbitrators and a subsequent agreement in which they specified a three-arbitrator panel in Boston, Massachusetts, in accordance with the commercial arbitration rules of the American Arbitration Association. The trial court compelled arbitration in Houston, Texas, before a single arbitrator under the first agreement but refused to compel arbitration under the second agreement, impliedly ruling that the second agreement is illusory and substantively unconscionable. We conclude mandamus relief is warranted. For the reasons explained below, we direct the trial court to vacate its orders compelling arbitration under the first agreement and to issue an order compelling arbitration under the second agreement. Given this ruling, the employer's interlocutory appeal is rendered moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/real party in interest Abe Shasha began his employment in December 2001, with the predecessor of appellant/relator Aspen Technology, Inc. At that time, Shasha signed an agreement regarding his employment, in which he and Aspen's predecessor agreed to arbitrate any and all disputes or controversies that might arise between Shasha and Aspen's predecessor, including without limitation employment disputes (hereinafter "2001 Agreement"). On October 28, 2005, Shasha signed an agreement regarding his incentive compensation for Aspen fiscal year 2006 (hereinafter "2006 Agreement"). In the 2006 Agreement, Shasha agreed that any legal action against Aspen would be settled exclusively by arbitration before a three-

member panel in Boston, Massachusetts in accordance with the commercial arbitration rules of the American Arbitration Association (hereinafter "AAA").

Early in 2006, Shasha notified Aspen that he had a dispute regarding his commissions. In May 2006, Shasha resigned from his position with Aspen and soon thereafter filed suit against Aspen in the trial court below asserting contract and tort claims. Aspen filed a motion to compel arbitration, relying on both the 2001 Agreement and the 2006 Agreement. In response, Shasha admitted that he executed both the 2001 Agreement and the 2006 Agreement. Shasha argued that the arbitration provision in the 2006 Agreement replaced the arbitration provision in the 2001 Agreement. Shasha did not dispute that his claims fall within the scope of the arbitration clause in the 2006 Agreement; rather, Shasha asserted that this arbitration clause is unenforceable because (1) the clause is illusory given that Aspen allegedly retains a unilateral, unrestricted right to terminate this arbitration agreement; and (2) the clause imposes such exorbitant costs on Shasha that it is substantively unconscionable.

The trial court granted Aspen's motion to compel, ordered all claims to arbitration, and stayed the case pending the conclusion of the arbitration. However, the trial court's first order did not specify the site for the arbitration or the agreement under which the trial court ordered the parties to arbitrate the claims. Confusion arose as to whether the trial court had ordered arbitration under the 2006 Agreement. Aspen asserted that the trial court had ordered the parties to arbitrate the claims in Boston, Massachusetts, under the 2006 Agreement. Shasha filed a motion for reconsideration and clarification. In this motion, Shasha stated that the trial court's order was ambiguous as to whether the trial court had compelled the parties to arbitrate the claims under the 2001 Agreement or under the 2006 Agreement. Shasha asserted that he had no issue with the court to the extent it intended to compel arbitration under the 2001 Agreement. However, to the extent the trial court had ordered arbitration under the 2006 Agreement, Shasha moved the court to reconsider its rejection of the two grounds upon which Shasha had asserted that this arbitration agreement is unenforceable. Shasha requested the trial court to order the parties to arbitration under the 2001 Agreement in Houston, Texas, with a single arbitrator.

Aspen filed a response in opposition in which it argued that no clarification was necessary because the trial court already had ordered the parties to arbitrate in Boston, Massachusetts, under the 2006 Agreement. Aspen again presented argument in support of its position that there is no merit in Shasha's two objections to the enforceability of the arbitration clause in the 2006 Agreement. Aspen asserted that the Federal Arbitration Act ("Federal Act") and the Texas Arbitration Act ("Texas Act") both mandate that Shasha's claims be arbitrated in Boston, Massachusetts before a panel of three arbitrators pursuant to the commercial arbitration rules of the AAA ("Commercial Rules") and that the proceedings in the trial court be stayed pending completion of arbitration. Aspen submitted to the trial court a proposed order denying Shasha's motion. In this proposed order, the trial court would compel arbitration in Boston, Massachusetts, before a panel of three arbitrators pursuant to the Commercial Rules and stay the proceedings in the trial court until the conclusion of the arbitration. Instead of signing this proposed order, the trial court signed an order in which it granted Shasha's motion and compelled arbitration in Houston, Texas, with a single

arbitrator under the 2001 Agreement. Aspen has appealed this order under section 171.098(a)(1) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1) (Vernon 2005). Aspen also filed a petition for writ of mandamus. This court has consolidated these two proceedings.

## II. STANDARD OF REVIEW

 The Federal Act applies to an arbitration agreement in any contract involving interstate commerce, to the full extent of the Commerce Clause of the United States Constitution. *See* 9 U.S.C. § 2 (1999); *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 277–81, 115 S.Ct. 834, 839–41, 130 L.Ed.2d 753 (1995); *In re L & L Kempwood Assocs.,* 9 S.W.3d 125, 127 (Tex.1999). Shasha does not dispute that the Federal Act applies. The 2001 Agreement and the 2006 Agreement both involve interstate commerce, and therefore, the Federal Act applies. Mandamus relief is available when the trial court clearly abuses its discretion by erroneously denying a party its contracted-for arbitration rights under the Federal Act. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 780–81 (Tex.2006) (orig. proceeding); *In re Igloo Prods. Corp.,* 238 S.W.3d 574, 577 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding [mand. denied] ). Therefore, Aspen's right to mandamus relief hinges on whether the trial court erred by refusing to compel arbitration under the 2006 Agreement.[1] On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court reasonably could have reached only one decision, and not the decision the trial court made. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). Mandamus review of issues of law is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex. 2005).

 In construing the 2006 Agreement, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). A contract is ambiguous when its meaning is

---

1. In 1992, addressing whether a party is entitled to mandamus relief for wrongful denial of its arbitration rights under an agreement subject to the Federal Act, the Texas Supreme Court concluded that the Texas Act does not provide such a party the ability to assert an interlocutory appeal. *See Jack B. Anglin, Inc. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992). In 2006, the Texas Supreme Court decided that such a party can file an interlocutory appeal of the trial court's denial of a motion to compel arbitration under an agreement governed by the Federal Act. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 778–80 (Tex.2006). It might appear that Aspen is not entitled to mandamus relief in this case because the Federal Act governs the Agreement and, under *In re D. Wilson Const. Co.,* Aspen has an adequate remedy at law by interlocutory appeal. *See id.* However, the Texas Supreme Court reaffirmed in *In re D. Wilson Const. Co.* that mandamus relief remains available when a party is erroneously denied its contracted-for arbitration rights under the Federal Act. *See In re D. Wilson Const. Co.,* 196 S.W.3d at 780–81. Therefore, we conclude that mandamus relief is still potentially available to Aspen.

uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* However, when a written contract is worded such that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003).

### III. ISSUES AND ANALYSIS

#### A. Does this court lack mandamus jurisdiction because the trial court did not deny a motion to compel arbitration?

 Shasha first argues that this court lacks jurisdiction to consider Aspen's mandamus petition because the trial court allegedly did not deny Aspen's application to compel arbitration. According to Shasha, Aspen moved to compel arbitration under either the 2001 Agreement or the 2006 Agreement, and the trial court granted this request by compelling arbitration under the 2001 Agreement. Though Aspen based its motion to compel on both agreements, in response to Shasha's motion for reconsideration and clarification, Aspen relied on the 2006 Agreement and requested the trial court to order arbitration of Shasha's claims in Boston, before a panel of three arbitrators pursuant to the Commercial Rules. The trial court refused to do so, and instead, it ordered the parties to arbitrate the claims in Houston, with a single arbitrator under the 2001 Agreement. Mandamus relief is available if a trial court abuses its discretion by erroneously denying a party its contracted-for arbitration rights under the Federal Act. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 780–81. Impliedly finding that the arbitration clause in the 2006 Agreement is illusory and substantively unconscionable, the trial court denied Aspen its contracted-for arbitration rights under the 2006

Agreement, which is governed by the Federal Act. Therefore, this court has mandamus jurisdiction to consider whether the trial court clearly abused its discretion in so ruling. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 780–81.

#### B. Did the trial court err by concluding that the arbitration clause in the 2006 Agreement is illusory?

 Shasha asserted in the trial court that the arbitration clause in the 2006 Agreement is illusory because Aspen allegedly retains a unilateral, unrestricted right to terminate this arbitration agreement. If one party to an arbitration agreement retains such a right, then the arbitration agreement is illusory and unenforceable. *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex.2006). Shasha asserts that Aspen retains a unilateral, unrestricted right to terminate the arbitration provision in the 2006 Agreement based on the following language in that agreement:

> The incentive compensation plan administrator (Vice President of Worldwide Sales Operations) is responsible for the interpretation of the plan. If the meaning or interpretation of the plan wording requires clarification after consideration of all the facts, the Senior Vice President, Worldwide Sales and Business Development (SVP Sales) or his/her designee(s), if any[,] will issue a written ruling, which will be final. In addition, the SVP Sales will be responsible for the periodic review of the plan *and may make revisions from time to time.*

(emphasis added). The title of the 2006 Agreement is "Aspen Technology, Inc. FY 2006 Incentive Compensation Plan Global Account Manager (GAM)." In the 2006 Agreement, there is no definition of the term "plan." Shasha asserts that, under

the above language, the SVP Sales may make revisions to the 2006 Agreement from time to time. Presuming that the above language refers to the 2006 Agreement as "the plan," and presuming that the SVP Sales may review the 2006 Agreement and make revisions from time to time, this is not equivalent to stating that the SVP Sales has a unilateral, unrestricted right to terminate the arbitration provision in the 2006 Agreement. Under the 2006 Agreement, "[a]ny additional terms or conditions, or verbal or written agreements between [Shasha] and [Aspen] will not apply unless explicitly agreed to and approved in a signed writing by both the SVP Sales and [Shasha]."

We conclude that, under the unambiguous language of the 2006 Agreement, Aspen does not retain a unilateral, unrestricted right to modify or terminate the arbitration provision in that agreement; therefore, that arbitration provision, as a matter of law, is not illusory. *See In re Dillard Dept. Stores, Inc.,* 186 S.W.3d 514, 516 (Tex.2006) (holding that arbitration agreement did not give employer unilateral, unrestricted right to modify the arbitration agreement). The cases on which Shasha relies are not on point. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 228–30 (Tex.2003) (concluding that it was unclear whether employer retained unilateral right to terminate arbitration agreement without notice in case in which agreement stated that the employer "reserves the right to unilaterally abolish or modify any personnel policy without prior notice"); *In re C & H News Co.,* 133 S.W.3d 642, 646 (Tex.App.-Corpus Christi 2003, orig. proceeding) (concluding agreement was illusory because it contained provision giving employer the ability to modify or delete provisions as the employer deems appropriate, with or without prior notification to employees); *Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386,

386–88 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.) (holding arbitration agreement contained in employee handbook was not supported by consideration, in case in which handbook stated that (1) it was not intended to constitute a legal contract with any employee because that could only occur with a written agreement executed by a facility executive director and (2) the employer reserved the right to amend or rescind any provision of the handbook as it deemed appropriate in its sole and absolute discretion). Therefore, the trial court clearly abused its discretion to the extent it concluded that the arbitration clause in the 2006 Agreement is illusory.

**C. Did the trial court err by concluding that the arbitration clause in the 2006 Agreement is substantively unconscionable?**

 Shasha asserted in the trial court that the arbitration clause in the 2006 Agreement imposes such exorbitant costs on him that it is substantively unconscionable. Under certain circumstances, arbitration costs could be so high that they preclude a litigant from effectively vindicating his rights through arbitration. *See Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 90–92, 121 S.Ct. 513, 522–23, 148 L.Ed.2d 373 (2000). A party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of providing specific evidence showing a likelihood that he would incur excessive arbitration costs. *See Green Tree Fin. Corp.,* 531 U.S. at 90–92, 121 S.Ct. at 522–23; *In re U.S. Home Corp.,* 236 S.W.3d 761, 764 (Tex.2007); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex.2001); *TMI, Inc. v. Brooks,* 225 S.W.3d 783, 796 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

The 2006 Agreement is silent as to arbitration costs. In the trial court Shasha offered an affidavit from one of his lawyers. In this affidavit, Shasha's counsel testifies, in pertinent part, to the following:

- Based on his personal knowledge of the Commercial Rules and the AAA employment arbitration rules ("Employment Rules"), claims arbitrated under the Commercial Rules are significantly more costly to the employee/claimant than claims arbitrated under the Employment Rules. This is because under the Employment Rules, the employee/claimant is only responsible for a filing fee of $50–150; whereas under the Commercial Rules, the employee/claimant is responsible for the filing fee, the case service fee, and one-half of all the arbitrator fees unless the arbitration agreement states otherwise.
- The AAA's filing fee for this case would be $4,250, and the AAA case service fee would be $1,750. The AAA administration fee would be $325. Although arbitrator fees vary for each arbitrator, a "median estimate" is $305.50 per hour for each arbitrator based on ten arbitrator resumes for the Boston area from the AAA website. A conservative estimate of total arbitrator fees based on four days of work per arbitrator is $24,000 (32 hours × $250/hour per arbitrator).
- Shasha's air fare and hotel costs for an arbitration in Boston would be at least $2,700.

Presuming that arbitrations under the Commercial Rules are significantly more costly than arbitrations under the Employment Rules, this testimony alone does not provide specific evidence as to Shasha's likely costs to arbitrate under the 2006 Agreement. Though Shasha's counsel provides projected fees for filing with the AAA, AAA case service, and AAA administration, this projection is based on the premise that the AAA would administer the arbitration.[2] However, the arbitration provision in the 2006 Agreement does not require that the AAA conduct or administer the arbitration; rather the provision states that arbitration shall be "in accordance with the [Commercial Rules]." Under this language, the AAA may administer the arbitration, but the parties are not required to have the arbitration administered by the AAA. *See TMI, Inc.,* 225 S.W.3d at 797. Although the party seeking to compel arbitration in *TMI, Inc.* presented evidence that arbitration under the same arbitration provision was available by a non-AAA arbitrator at a cost significantly lower that the costs of a AAA arbitration, such proof is not necessary for Shasha to be required to make a factual showing that the AAA would administer the arbitration. *See Green Tree Fin. Corp.,* 531 U.S. at 90 n. 6, 121 S.Ct. at 522 n. 6 (concluding that party asserting substantive unconscionability could not carry her burden of proof based on AAA fees unless she, made a factual showing, among other things, that the AAA would administer the arbitration).

As to arbitrator fees, again, Shasha's projected fees appear to be based on fees charged by AAA arbitrators. In addition, Shasha's counsel testifies that, under the Commercial Rules, absent agreement by the parties, Shasha must pay half of the arbitrator fees. However, under the Commercial Rules attached to counsel's affidavit, the arbitration panel in its final award

---

**2.** Shasha's counsel attaches a copy of the Commercial Rules and the fee schedule for arbitrations conducted by the AAA, but the AAA fee schedule is not part of the Commercial Rules.

shall apportion the arbitration fees, expenses, and compensation among the parties in such amounts as the panel determines is appropriate.

We conclude that the evidence is legally insufficient to support the trial court's implied finding that Shasha satisfied his burden of providing specific evidence showing a likelihood that he would be denied access to arbitration based on excessive arbitration costs. *See Green Tree Fin. Corp.,* 531 U.S. at 90–92, 121 S.Ct. at 522–23; *In re U.S. Home Corp.,* 236 S.W.3d at 764; *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 756–57; *TMI, Inc.,* 225 S.W.3d at 796. On the record before it, the only finding the trial court could have made was that Shasha did not satisfy this burden. By impliedly ruling to the contrary, the trial court clearly abused its discretion.

In addition, even presuming that the AAA would administer the arbitration and that the arbitration costs and fees would be allocated equally by the arbitration panel, Shasha's counsel projected aggregate costs and fees of $30,325, which would make Shasha's portion $15,162.50. Presuming that the extra expense of traveling to Boston for the arbitration is $2,700 (the figure stated in the affidavit of Shasha's counsel) the total financial burden on Shasha would be $17,862.50. However, Shasha is asserting a claim of between $300,000 and $500,000, and Shasha's base salary, without commissions, when he entered into the 2006 Agreement was $120,000. Though Shasha provided his own affidavit, in which he states that the costs of pursuing his claim through arbi-

tration in Boston under the 2006 Agreement would be extraordinary, oppressive, unaffordable, and would deprive him of the opportunity to litigate his claim, these conclusory statements are legally insufficient. *See, e.g., Green Tree Fin. Corp.,* 531 U.S. at 90 n. 6, 121 S.Ct. at 522 n. 6 (concluding that party's unsupported statement that she did not have the resources to pay the high costs of arbitration was insufficient). Shasha does state that he is currently paying for the university studies of his three children and that since he stopped working at Aspen he has been unable to find "equivalent fixed income work." However, we determine substantive unconscionability based on the circumstances existing when the parties entered into the contract in October 2005, and Shasha provided no evidence as to his finances or ability to pay $17,862.50 at this time.[3] *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 757.

Under the applicable standard of review, we conclude that the trial court clearly abused its discretion by impliedly ruling that the arbitration clause in the 2006 Agreement is substantively unconscionable.[4]

### IV. CONCLUSION

The Federal Act governs the arbitration clause in the 2006 Agreement. Therefore, this court has mandamus jurisdiction to consider whether the trial court erred in denying Aspen its contracted-for arbitration rights under the 2006 Agreement. The trial court clearly abused its discretion (1) by impliedly finding that the arbitration

---

**3.** In any event, Shasha did not provide specific evidence in his affidavit that would prove his present ability to pay this amount.

**4.** Shasha relies on *In re Luna,* 175 S.W.3d 315, 319 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding [mand. pending] ). We are not bound by *In re Luna,* and, in any event, in

that case, there was evidence establishing that arbitration would force the former employee to pay fees that amounted to one-half of his annual compensation. *See In re Luna,* 175 S.W.3d 315, 321 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding [mand. pending] ). Therefore, *In re Luna* is not on point.

clause in the 2006 Agreement is illusory; (2) by impliedly finding that the clause is substantively unconscionable; and (3) by refusing to order the parties to arbitrate the claims under the 2006 Agreement. Accordingly, we conditionally grant a writ of mandamus directing the trial court to vacate its orders compelling arbitration under the 2001 Agreement and to issue an order (1) compelling arbitration under the 2006 Agreement before a three-arbitrator panel in Boston, Massachusetts, in accordance with the Commercial Rules and (2) staying the proceedings in the trial court pending completion of arbitration. We are confident the respected trial judge will comply with this opinion. Only in the unlikely event she fails to do so will the writ issue. Because we have granted this mandamus relief, we dismiss Aspen's interlocutory appeal as moot.