ACCEPTED
04-14-00829-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/9/2015 2:26:56 PM
KEITH HOTTLE
CLERK

**ORAL ARGUMENT REQUESTED**

No. 04-14-00829-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/9/2015 2:26:56 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT OF TEXAS
AT SAN ANTONIO

Western Rim Property Services, Inc.,

*Appellant,*

v.

Paula Bazan-Garcia,

*Appellee.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. CC# 03 OF
BEXAR COUNTY, TEXAS, CAUSE NO. 2014CV01064

**APPELLANT'S REPLY BRIEF**

**BAKER BOTTS L.L.P.**
Jennifer M. Trulock
State Bar No. 90001515
jennifer.trulock@bakerbotts.com
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
(214) 953-6500
(214) 953-6503 (Facsimile)

**BAKER BOTTS L.L.P.**
Stephanie F. Cagniart
State Bar No. 24079786
stephanie.cagniart@bakerbotts.com
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701-4078
(512) 322-2500
(512) 322-2501 (Facsimile)

Attorneys for Appellant Western Rim Property Services, Inc.

# Table of Contents

**Table of Contents**

**Page**

Table of Contents ...................................................................................... i

Summary of the Argument .........................................................................1

Argument ...................................................................................................2

    I.     The AAA Rules are a publicly available authority that can be considered by this Court. ...................................................................2

    II.    The delegation clauses in the parties' arbitration agreements are enforceable, and require the Court to send Bazan-Garcia's unconscionability defense to arbitration. .............................................6

        A.    Bazan-Garcia has waived any argument that the delegation clauses are unconscionable. .....................................7

        B.    Bazan-Garcia's claim that the arbitration agreements' cost and venue provisions make the delegation clause unconscionable is directly contradicted by the AAA Rules. ......................................................................................9

        C.    Bazan-Garcia's claim that arbitrating her unconscionability defense would be prohibitively expensive is not supported by any evidence in the record ........12

    III.    Arbitration under the AAA Rules is not unconscionable. ...................15

    IV.    Even if the AAA Rules do not apply to this appeal, Bazan-Garcia is bound by her arbitration agreements because she has failed to prove those agreements are unconscionable. .........................17

        A.    Bazan-Garcia cannot rely on prior AAA invoices to prove that the arbitration under the Employee Handbook is unconscionable, because she has not shown that arbitration will be conducted by the AAA. ...............................17

        B.    Bazan-Garcia cannot rely on AAA invoices to prove that arbitration under the Employee Handbook is

unconscionable if this Court is barred from considering the AAA Rules. ..................................................................20

C.    Bazan-Garcia cannot prove that the Employee Handbook's arbitration agreement is unconscionable because she has not shown that a less expensive arbitration alternative is unavailable to her..............................22

D.    Bazan-Garcia cannot prove that arbitration under the Arbitration Agreement is unconscionable because she has not presented any evidence showing how much it would cost to travel to Dallas County...............................................23

V.    The challenged provisions do not constitute the "essential purpose" of the parties' agreements, and may be severed from the agreements. ..................................................................24

Conclusion and Prayer for Relief..............................................................25

Certificate of Compliance ........................................................................27

Certificate of Service ...............................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aspen Tech., Inc. v. Shasha*,
253 S.W.3d 857 (Tex. App.—Houston [14th Dist.] 2008, no pet.) .......18, 19, 20

*Caballero v. Contreras*,
No. 13-10-00150-CV, 2010 WL 3420527 (Tex. App.—Corpus Christi
Aug. 31, 2010, no pet.) .....................................................................12

*Coon v. Umphrey*,
09-09-00264-CV, 2009 WL 3030354 (Tex. App.—Beaumont Sept. 24,
2009, pet. dism'd) ...............................................................................4

*Forest Oil Corp. v. McAllen*,
268 S.W.3d 51 (Tex. 2008)..................................................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000).........................................................15, 18, 19, 20, 23

*In re Olshan Found. Repair Co., LLC*,
328 S.W.3d 883 (Tex. 2010) .........................................3, 4, 20, 21, 22

*In re Poly-America*,
262 S.W.3d 337 (Tex. 2008) .........................................11, 12, 17, 24

*John M. O'Quinn, P.C. v. Wood*,
12-06-001510CV, 2006 WL 3735617 (Tex. App.—Tyler Dec. 20, 2006)..........4

*Mitchison v. Houston Ind. Sch. Dist.*,
803 S.W.2d 769 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ..............5

*Nabors Drilling USA, LP v. Carpenter*,
198 S.W.3d 240 (Tex. App.—San Antonio 2006, no pet.) ................................8

*Perez v. Spring Branch Indep. Sch. Dist.*,
2011 WL 742601 (Tex. App.—Houston [14th Dist.] Mar. 3, 2011, pet.
denied)..................................................................................................5

*Rent-A-Center, West v. Jackson*,
561 U.S. 63 (2010)...................................................................7, 9, 13

*Venture Cotton Co-op v. Freeman*,
435 S.W.3d 222 (Tex. 2014) ....................................................................24, 25

*Winslow v. D.R. Horton America's Builder*,
04-12-00376-CV, 2013 WL 2368300 (Tex. App.—San Antonio May 29,
2013, no pet.) .........................................................................................................4

**OTHER AUTHORITIES**

AAA Employment Rules ..............................................................................*passim*

Tex. R. App. P. 38.1(k)(1)(C) ...................................................................................3

## SUMMARY OF THE ARGUMENT

Bazan-Garcia bases her Response on one central claim: that this Court cannot consider the Employment Rules of the American Arbitration Association ("AAA Rules") because a copy of those rules was not included in the clerk's record. Her reasons for making this argument are easy to understand. If the AAA Rules apply, then the Court must send all of Bazan-Garcia's claims—including her unconscionability defense—to arbitration pursuant to the rules' delegation clause. The AAA Rules also defeat Bazan-Garcia's unconscionability defense on the merits, because they supersede all three provisions that she contends make the parties' agreements unenforceable.

Bazan-Garcia cannot escape her arbitration agreements so easily. It is well established that Texas courts can consider the publicly available AAA Rules, regardless of whether they were formally entered into evidence. Any deviation from that rule has no basis in the law, nor would it produce a fair result where both parties have relied on those rules throughout the litigation.

Moreover, Bazan-Garcia is bound by her arbitration agreements *even if* the AAA Rules do not apply in this appeal. Bazan-Garcia can only avoid her agreements by presenting specific evidence that arbitration would be prohibitively expensive. The AAA invoices that Bazan-Garcia has submitted to prove that the Employee Handbook is unconscionable do not meet this burden, because Bazan-

1

Garcia has failed to show that the AAA would actually administer the arbitration proceeding, that the AAA would charge similar fees as those shown on the invoices, and that no cheaper arbitration alternatives are available. And Bazan-Garcia has submitted *no* evidence showing her costs if the arbitration were held in Dallas County, which is fatal to her claim that the Arbitration Agreement is unconscionable.

Bazan-Garcia is bound by her agreements to arbitrate. WRPS therefore requests that this Court reverse the trial court's order, abate this litigation, and compel arbitration of Bazan-Garcia's claims.

## ARGUMENT

### I. The AAA Rules are a publicly available authority that can be considered by this Court.

It is undisputed that the Employment Rules of the American Arbitration Association ("AAA Rules") govern both of the parties' arbitration agreements. *See* App. 3 (Arbitration Agreement), App. 13 (Employee Handbook).[1] These rules are available to the public through the AAA's website, *see* Opening Br. at 2 n.2, and were relied on by both parties before the trial court, *see* CR at 25–28, 85–94; RR at 6–7, 10–12, 15. WRPS also included a copy of the AAA Rules in the Appendix to its Opening Brief, as required by the Texas Rules of Appellate

---

[1] The Clerk's Record is referred to herein as "CR," the Reporter's Record as "RR," the Opening Brief filed by WRPS on Dec. 24, 2014 as "Opening Br.," the Appendix to the Opening Br. as "App.," and the Response Brief filed by Bazan-Garcia on January 20, 2015 as "Resp. Br."

2

Procedure. *See* App. at 14–65; Tex. R. App. P. 38.1(k)(1)(C) (appendix must include "the text of any rule . . . on which the argument is based"). Despite this, and for the first time on appeal, Bazan-Garcia claims that this Court cannot consider the AAA Rules in resolving the parties' dispute, because "WRPS did not attach the AAA Employment Rules to its Motion to Compel and did not introduce the AAA Employment Rules as an exhibit at the hearing on its Motion to Compel Arbitration." Resp. Br. at 11.

Bazan-Garcia is wrong. The AAA Rules are not evidence; they are a publicly accessible authority. Consequently, Texas courts can apply those rules regardless of whether they were formally introduced into evidence. The Texas Supreme Court, for example, did precisely that in *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883 (Tex. 2010). Like Bazan-Garcia, the respondents in *Olshan* claimed that the appellate court could not consider the AAA Commercial Arbitration Rules because they had not been formally introduced into evidence. *See* Resp. to Pet. for Writ of Mandamus, 2009 WL 2388979, at *9 (filed July 16, 2009); Tingdale's Merits Br., 2009 WL 4764118, at *12 (filed Nov. 16, 2009). Olshan countered that because the AAA Rules were incorporated into the parties' agreement, and "easily verifiable by reference to the AAA website, a source whose accuracy cannot reasonably be questioned," they were properly before the Court. Olshan's Reply to Tingdale's Merits Br., 2009 WL 5251087, at *8 n.8 (filed Dec.

3

21, 2009) (collecting cases). The Supreme Court agreed with Olshan, analyzing the AAA Rules in detail in its opinion and ultimately ruling in Olshan's favor. *See Olshan*, 328 S.W.3d at 895–96.

Similarly, in *In re Champion Technologies, Inc.*, Champion did not introduce a copy of the AAA Rules into evidence before the trial court. 222 S.W.3d 127, 133 n.6 (Tex. App.—Eastland 2005, pet. denied). On appeal, Champion attached a copy of the rules to its brief, which petitioners moved to strike as an improper attempt to introduce evidence on appeal. *See id.* The Eleventh Court of Appeals denied the motion, explaining:

> The [parties' agreement] incorporates the rules of the AAA as a part of its terms. The rules and procedures are readily available via the internet. Relators' act of providing a copy of these rules to the court is similar to a party attaching a copy of a statute or regulation for the court's benefit.

*Id.* This Court and other Texas courts of appeals also routinely cite the AAA Rules just as they would any other authority, regardless of whether the rules were included in the clerk's record. *See*, *e.g.*, *Winslow v. D.R. Horton America's Builder*, 04-12-00376-CV, 2013 WL 2368300, at *1 n.3–5 (Tex. App.—San Antonio May 29, 2013, no pet.); *Coon v. Umphrey*, 09-09-00264-CV, 2009 WL 3030354, at *4 n.2 (Tex. App.—Beaumont Sept. 24, 2009, pet. dism'd); *John M. O'Quinn, P.C. v. Wood*, 12-06-001510CV, 2006 WL 3735617, at *1 n.2 (Tex. App.—Tyler Dec. 20, 2006).

4

The two cases that Bazan-Garcia relies on in her Response are not to the contrary. Neither of the cited cases involved the AAA Rules or similar, publicly available authorities. Instead, they are instances where a court of appeals refused to consider a factual record that was not properly submitted as part of the record on appeal. *See* Resp. at 11 (citing *Mitchison v. Houston Ind. Sch. Dist.*, 803 S.W.2d 769, 771 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (holding the court of appeals could not consider the appellant's second "request for findings of facts and conclusions of law" that was filed with the trial court because appellant did not arrange for a copy of the request to be included in the clerk's record); *Perez v. Spring Branch Indep. Sch. Dist.*, 2011 WL 742601 (Tex. App.—Houston [14th Dist.] Mar. 3, 2011, pet. denied) (holding the court of appeals could not review evidentiary rulings made during a bench trial because appellant failed to pay for and provide a copy of the reporter's record to the appellate court)). Because WRPS is not seeking to introduce any such document into the appellate record, these cases are irrelevant.

Bazan-Garcia's attempt to avoid the AAA Rules is not only legally unsupported, it is puzzling in light of her actions before the trial court. WRPS cited and relied on the AAA Rules in its Motion to Compel Arbitration. *See* CR 25–28. In turn, Bazan-Garcia based her entire response on the claim that arbitration *under the AAA Rules* would be prohibitively expensive, and on an

affidavit from her attorney detailing his experience with the AAA rules. *See* CR at 81, 85–94; *see also* Resp. Br. at 4 (claiming Bazan-Garcia proved the arbitration agreement was unconscionable through "three AAA invoices from nearly identical employment cases that [her counsel] litigated under AAA rules"). At the hearing on its motion, WRPS discussed several AAA Rules in detail and provided copies of those rules to the court, just as counsel for both parties provided copies of key cases. *See* RR at 6–7 (discussing AAA Rules' delegation clause); *id.* at 10–12 (discussing delegation clause and AAA Rules governing costs, discovery and venue); *id.* at 15 (discussing process of arbitrating the issue of unconscionability under AAA Rules). Bazan-Garcia did not object, *see id.*, nor has she claimed that WRPS misstated or misrepresented the AAA Rules.

There is no legal or equitable justification for this Court to ignore the publicly available rules that govern the parties' arbitration agreements. The AAA Rules therefore apply to this appeal.

## II. The delegation clauses in the parties' arbitration agreements are enforceable, and require the Court to send Bazan-Garcia's unconscionability defense to arbitration.

Bazan-Garcia's only defense to arbitration is her claim that the arbitration agreements are unconscionable. She does not dispute, however, that the AAA Rules' delegation clause gives the arbitrator—not the court—authority to decide her unconscionability defense. *See* AAA Rule 6(a) (App. 30) ("The

6

arbitrator shall have the power to rule on his or her own jurisdiction, including any objections to the existence, scope or validity of the arbitration agreement."). That concession resolves this appeal, because courts must enforce delegation clauses under the Texas Arbitration Act. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008) (holding that the Court had "no discretion but to direct the court to compel arbitration and stay [this] litigation" because the parties' arbitration agreement contained a delegation clause).

To avoid this result, Bazan-Garcia raises another new argument on appeal. She claims the delegation clause *itself* is unconscionable, and therefore unenforceable, because simply arbitrating her unconscionability defense under the parties' agreements would be prohibitively expensive. *See* Resp. at 34–39. This untimely argument should be rejected by the Court because it is waived, directly contradicted by the AAA Rules, and unsupported by any evidence in the record.

### A. Bazan-Garcia has waived any argument that the delegation clauses are unconscionable.

Bazan-Garcia admits that she did not challenge the arbitration agreements' delegation clauses in her Response to WRPS's Motion to Compel Arbitration. *See* Resp. at 38. She is therefore bound to them. *See Rent-A-Center, West v. Jackson*, 561 U.S. 63, 73–76 (2010) (holding that a plaintiff who failed to "make any arguments specific to the delegation provision" before the trial court could not raise those arguments on appeal, and was bound to that provision).

7

On appeal, Bazan-Garcia protests that "no fault can be assigned" to her for failing to challenge the delegation clauses below, because WRPS did not introduce the AAA Rules into evidence. Resp. at 38. But WRPS was not required to do so. *See* Section I, *supra* at 2–6. Moreover, WRPS discussed the delegation clause at length in its Motion to Compel Arbitration, putting Bazan-Garcia on notice that it was relying on that clause. *See* CR 25–28. Bazan-Garcia's failure to address this issue is therefore unexcused. *See Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 249 (Tex. App.—San Antonio 2006, no pet.) (holding that a party seeking to avoid an arbitration agreement can only rely on arguments that it raised before the trial court).

In the alternative, Bazan-Garcia insists that she raised and preserved her challenges to the delegation clauses at the hearing when her counsel stated: "***[Bazan-Garcia]'s going to have to go to Dallas to complain to the arbitrator about [the arbitration agreements].***" Resp. at 38 (quoting RR at 15) (emphasis in Resp.). According to Bazan-Garcia, this statement and two other exchanges between the judge and WRPS's counsel prove that "the trial court also understood that Bazan-Garcia was challenging the delegation clause because it required Bazan-Garcia to incur prohibitive costs of first traveling to Dallas County, Texas to challenge the rest of the agreement." *See* Resp. at 38–39.

At most, these statements show that Bazan-Garcia preserved an argument that the delegation clause in the Arbitration Agreement is unenforceable, based on that agreement's venue clause. *See* App. 3 ("Any arbitration relating to any dispute covered by this Agreement shall be arbitrated in Dallas County, Texas."). But the Arbitration Agreement is *only one* of the agreements at issue in this appeal. The second agreement—the Employee Handbook that is incorporated by reference into the Acknowledgement—does not have a venue clause. *See* App. 4, 13. Because, by her own admission, Bazan-Garcia failed to raise any timely challenge to the Employee Handbook's delegation clause, this Court must enforce that clause and compel arbitration of Bazan-Garcia's unconscionability defense. *See Rent-A-Center*, 561 U.S. at 74.

### B. Bazan-Garcia's claim that the arbitration agreements' cost and venue provisions make the delegation clause unconscionable is directly contradicted by the AAA Rules.

Bazan-Garcia's untimely challenges to the delegation clauses also fail because they are directly contradicted by the AAA Rules, which control over any contrary provisions in the parties' arbitration agreements. *See* AAA Rule 1 (App. 28) (the arbitrator must apply the AAA Rules if "an adverse material inconsistency exists between the arbitration agreement and these rules").

First, Bazan-Garcia claims that the delegation clause in the Employee Handbook is unconscionable because its cost-sharing provision allegedly requires

9

her to pay "half of the arbitrator's fees for any hearing" on her unconscionability defense. Resp. at 35–36. But under the AAA Rules, Bazan-Garcia will not pay *any* of the arbitrator's fees or hearing expenses. Instead, Bazan-Garcia will pay an initial filing fee of $200, and WRPS will be responsible for paying all hearing fees and all of the arbitrator's fees and expenses. *See* Opening Br. at 26–27; AAA Rule 45 (App. 43); AAA Rule 48(i)–(iii) (App. 45–47). And if the filing fee causes her "excessive hardship," then Bazan-Garcia is permitted to request that the fee be reduced or deferred. AAA Rule 43 (App. 43).

Bazan-Garcia's Response never addresses the above AAA Rules on fees, even though WRPS identified and discussed them in detail at the hearing on its motion and in its Opening Brief. *See* RR at 10–11; Opening Br. at 26–28. Nor does Bazan-Garcia contend that she cannot afford the $200 filing fee, which is less than what she paid to file her claims in state court. *See* CR at 81. Her silence impliedly concedes that this challenge to the Employee Handbook's delegation clause is without merit, and that arbitrating her unconscionability defense would not be prohibitively expensive.

Second, Bazan-Garcia claims that the delegation clause in the Arbitration Agreement is unconscionable because its venue clause allegedly requires her to travel to Dallas County to arbitrate her unconscionability defense. Resp. at 35–37. But under the AAA Rules, the unconscionability defense would

10

be addressed during the Management Conference, which is "conducted by telephone conference call" unless the parties agree otherwise. AAA Rule 8 (App. 31). Bazan-Garcia will therefore not have to incur any travel expenses.

Furthermore, AAA Rule 10 empowers the arbitrator to choose the locale of arbitration, "having regard for the contentions of the parties and the circumstances of the arbitration." AAA Rule 10 (App. 32). Thus, even if a non-telephonic hearing was necessary to decide Bazan-Garcia's unconscionability defense, Bazan-Garcia could request a location other than Dallas County.[2] This rule defeats Bazan-Garcia's challenge to the Arbitration Agreement, because the Texas Supreme Court has expressly held that a provision that the arbitrator is empowered to modify cannot be unconscionable. *See In re Poly-America*, 262 S.W.3d 337, 347 (Tex. 2008) (applying this rule to an agreement that "provide[d] that the arbitrator may modify unconscionable terms"); *see also* Opening Br. at 29–30 (discussing *Poly-America*, 262 S.W.3d at 347).

---

[2] Bazan-Garcia suggests that during the hearing on WRPS's Motion to Compel Arbitration, WRPS conceded that Bazan-Garcia would have to travel to Dallas to arbitrate her unconscionability defense. *See* Resp. at 39. This is not the case. In response to a question from the court regarding whether Bazan-Garcia would have to present her unconscionability defense to an arbitrator in Dallas, WRPS's counsel responded: "They do have to ask the arbitrator in Dallas, *unless the AAA decides the arbitration should not occur in Dallas*." RR at 11–12 (emphasis added). Bazan-Garcia selectively quotes this portion of the record, and omits the italicized phrase. Nothing in the AAA Rules or the Arbitration Agreement prevents either the arbitrability question from being resolved by telephonic conference or a request from Bazan-Garcia to change the venue.

11

In her response, Bazan-Garcia ignores *Poly-America* and insists that WRPS cannot rely on this argument because "[c]ourts have expressly rejected this same circular logic." Resp. at 36. In support, she quotes a footnote from an unpublished case in which the Thirteenth Court of Appeals stated that "it would appear preferable" for such issues to "be submitted to, and decided by, the courts as a gateway matter." Resp. at 36–37 (quoting *Caballero v. Contreras*, No. 13-10-00150-CV, 2010 WL 3420527, at \*10 n.2 (Tex. App.—Corpus Christi Aug. 31, 2010, no pet.)). But this authority cannot supersede authority from the Texas Supreme Court. Moreover, Bazan-Garcia conveniently omits the rest of that footnote, in which the *Caballero* panel acknowledged *Poly-America*'s rule and that the rule is binding on the courts of appeals. *See id.* Because *Poly-America* forecloses Bazan-Garcia's challenge to the Arbitration Agreement's delegation clause, Bazan-Garcia is bound to her agreement.

C. **Bazan-Garcia's claim that arbitrating her unconscionability defense would be prohibitively expensive is not supported by any evidence in the record.**

Finally, Bazan-Garcia's untimely challenges to the delegation clauses fail because she has not provided ***any*** evidence showing that arbitrating her unconscionability defense under the Employee Handbook or the Arbitration Agreement would be prohibitively expensive.

Before the trial court, Bazan-Garcia claimed that the arbitration agreement in the Employee Handbook was unconscionable because its cost-sharing provision allegedly requires her to split the costs of arbitration equally with WRPS. *See* Resp. at 10. Bazan-Garcia estimated that arbitrating the merits of her claims against WRPS could cost upwards of $20,000, based on invoices from three prior AAA arbitrations, described as "labor cases . . . similar in nature, complexity, and amount of witnesses as Ms. Bazan-Garcia's case." CR 85.

How much it would cost to arbitrate the *merits* of Bazan-Garcia's claims, however, has no relevance to whether the delegation clause is unconscionable. The delegation clause requires Bazan-Garcia to submit her unconscionability defense to the arbitrator. To avoid that clause, therefore, Bazan-Garcia must show that arbitrating just her unconscionability defense would be prohibitively expensive. *Rent-A-Center*, 561 U.S. at 74. The United States Supreme Court has warned that this is a "difficult" standard to meet, because such a proceeding is usually less complicated, less fact-intensive, and less lengthy than arbitrating the actual merits of the parties' underlying dispute. *Id.* ("[T]he unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability [of the arbitration agreement] than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.").

13

Bazan-Garcia failed to introduce any evidence to meet this burden. The three AAA invoices she submitted, for example, were for proceedings that lasted 2 to 3 days each, involved testimony from witnesses and experts, and required the arbitrator to decide the merits of all of the parties' statutory and fact-intensive employment claims. *See* CR 85–94. Any hearing on Bazan-Garcia's unconscionability defense, in contrast, would likely last an hour or less, involve a smaller and much simpler set of issues, require little or no fact-finding, and only require testimony from Bazan-Garcia herself. Because there is no evidence on the costs of such a hearing, or even a showing that a hearing would be required, Bazan-Garcia cannot prove that the Employee Handbook's delegation clause is unconscionable.

Bazan-Garcia's challenge to the Arbitration Agreement's delegation clause—that it would be prohibitively expensive to travel to Dallas to arbitrate her unconscionability defense—is also unsupported by the evidence. Bazan-Garcia submitted an affidavit to the trial court stating that arbitrating the merits of her claims in Dallas would cause her to "incur substantial additional expenses in travel and lodging." CR 96–97. But this conclusory statement does not provide any information regarding how much such travel would actually cost, much less prove a likelihood that Bazan-Garcia could not pursue her claims if she were required to incur those costs. Indeed, Bazan-Garcia's affidavit is almost identical to testimony

14

that the U.S. Supreme Court found was inadequate to prove that an arbitration agreement was unconscionable in *Green Tree Fin. Corp.-Ala. v. Randolph. See* 531 U.S. 79, 91 n.6 (2000) (discussing as insufficient plaintiff's testimony "that '[a]rbitration costs are high and that she did not have the resources to arbitrate'").

This Court must submit Bazan-Garcia's claims and her unconscionability defense to arbitration pursuant to the delegation clauses in the parties' agreements. The Court does not need to decide the merits of Bazan-Garcia's challenges to those clauses, because she waived them by failing to raise them before the trial court. Moreover, even if those claims were before this Court, they are directly contradicted by the AAA Rules and unsupported by the record. Both delegation clauses are therefore enforceable.

## III. Arbitration under the AAA Rules is not unconscionable.

If the Court determines that the AAA Rules apply in this appeal, but holds that the agreements' delegation clauses are unenforceable, then it will have to decide the merits of Bazan-Garcia's unconscionability defense—i.e., whether arbitrating Bazan-Garcia's claims against WRPS would be prohibitively expensive. This defense fails, because the AAA Rules directly contradict all of the challenges that Bazan-Garcia has raised against the Employee Handbook and the Arbitration Agreement.

15

At the hearing on its Motion to Compel Arbitration and in its Opening Brief, WRPS explained that the Employee Handbook agreement's cost-sharing provision is not unconscionable because the AAA Rules expressly limit Bazan-Garcia's arbitration costs. *See* RR at 10–11; Opening Br. at 26–28; *see also* AAA Rule 1 (App. 28) (AAA Rules govern if "an adverse material inconsistency exists between the arbitration agreement and these rules"). Under these rules, Bazan-Garcia will be charged a $200 filing fee and any fees associated with her witnesses. AAA Rule 45 (App. 43). In addition, she can ask for relief from any fees that cause her "extreme hardship." AAA Rule 43 (App. 43). WRPS, on the other hand, is responsible for all hearing fees and for paying the arbitrator's fees and expenses. AAA Rules 48(i)–(iii) (App. 45–47). Bazan-Garcia has never disputed WRPS's interpretation of the rules, nor claimed that she cannot afford these expenses. She therefore cannot show that arbitration under the Employee Handbook would be prohibitively expensive.

Likewise, the venue and discovery-limitation provisions in the Arbitration Agreement do not make the agreement unconscionable, because the AAA Rules empower the arbitrator to modify both these provisions. *See* RR at 11 (discussing AAA Rules 9 and 10); Opening Br. at 30–31 (same). As explained in Section II.B above, Bazan-Garcia's claim that this Court can find these provisions unconscionable despite these rules is directly foreclosed by the Texas Supreme

16

Court's decision in *Poly-America*. *See supra* at 11–12 (discussing *Poly-America*, 262 S.W.3d at 347). Consequently, Bazan-Garcia also cannot show that arbitration under the Arbitration Agreement would be unconscionable.

IV. **Even if the AAA Rules do not apply to this appeal, Bazan-Garcia is bound by her arbitration agreements because she has failed to prove those agreements are unconscionable.**

Bazan-Garcia has staked this appeal on the hope that the Court will ignore the AAA Rules. But that alone cannot relieve Bazan-Garcia of her arbitration obligations. Instead, she must prove a likelihood that the excessive costs of arbitration would prevent her from pursuing her claims, including by identifying the organization or arbitrator who will conduct the proceeding, establishing what the fees would be charged by that organization or arbitrator, and demonstrating that no cheaper alternative is available to the parties. *See* Opening Br. at 23–25. As WRPS pointed out in its Opening Brief, Bazan-Garcia has not met any of these requirements, *see id.*, and she fails to justify or excuse these omissions in her Response. Consequently, regardless of whether the AAA Rules apply in this appeal, the Court must compel arbitration of Bazan-Garcia's claims.

A. **Bazan-Garcia cannot rely on prior AAA invoices to prove that the arbitration under the Employee Handbook is unconscionable, because she has not shown that arbitration will be conducted by the AAA.**

The only evidence that Bazan-Garcia has submitted to prove that arbitration under the Employee Handbook's cost-sharing provision would be

prohibitively expensive are three invoices from allegedly "similar arbitrations" conducted by the AAA. *See* CR 85–94. But the Employee Handbook does not require that the arbitration be conducted by the AAA; instead, it only requires that arbitration occur "under" the AAA Rules. *See* App. 13; *see also* Opening Br. at 23-25. Bazan-Garcia must therefore make a "factual showing that the AAA would administer the arbitration" before she can rely on those invoices to prove her unconscionability defense. *Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 864 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Green Tree*, 531 U.S. at 90 n.6).

Bazan-Garcia has not made any such showing. On appeal, she tries to avoid this requirement altogether by arguing that *Shasha*, one of the cases cited in WRPS's Opening Brief, stands for a different proposition: that "evidence of expected AAA costs presented *solely in the form of testimony* [is] legally insufficient." Resp. at 26 (emphasis added); *see also id.* (quoting *Shasha*, 253 S.W.3d at 864 ("[T]estimony alone does not provide specific evidence as to Shasha's likely costs to arbitrate under the [arbitration] agreement.")). Because Bazan-Garcia *also* submitted invoices from other arbitrations in support of her unconscionability argument, she claims that *Shasha* supports her position. *See id.*

Bazan-Garcia's argument misreads and misrepresents *Shasha.* After reviewing an affidavit submitted by plaintiff's attorney regarding how much arbitration with the AAA would cost, the court stated:

> **this** testimony alone does not provide specific evidence as to Shasha's likely costs to arbitrate under the 2006 Agreement. Though Shasha's counsel provides projected fees for filing with the AAA, AAA case service, and AAA administration, **this projection is based on the premise that the AAA would administer the arbitration.** However, the arbitration provision in the 2006 Agreement does not require that the AAA conduct or administer the arbitration; rather the provision states that arbitration shall be "in accordance with the [AAA Rules]." Under this language, **the AAA may administer the arbitration, but the parties are not required to have the arbitration administered by the AAA.**

253 S.W.3d at 864 (emphases added). In context, it is clear that the court of appeals' concern was not the testimonial nature of the evidence, but that Shasha did not provide an adequate basis for assuming that these costs would be governed by the AAA Rules' fee schedule. *See id.*

This requirement has also been adopted by the United States Supreme Court. In *Green Tree*, the Court explained that a plaintiff who failed to "make any factual showing that the American Arbitration Association would conduct the arbitration" could not rely on evidence of how much an AAA-administered proceeding would cost to show that her arbitration agreement was unconscionable. *Green Tree*, 531 U.S. at 90 n.6. And while the Texas Supreme Court has accepted

AAA invoices as some evidence of the costs of arbitration, it did so in a case where the parties' agreement specifically required them to submit their disputes to "binding arbitration *administered by* the American Arbitration Association." *Olshan*, 328 S.W.3d at 887, 897 (emphasis added).

Bazan-Garcia has failed to make any "factual showing that the AAA would administer the arbitration" under the parties' agreement. *See Shasha*, 253 S.W.3d at 864. She therefore cannot prove, based solely on invoices from AAA-administered arbitrations, that arbitration under the Employee Handbook would be prohibitively expensive and unconscionable.[3]

### B. Bazan-Garcia cannot rely on AAA invoices to prove that arbitration under the Employee Handbook is unconscionable if this Court is barred from considering the AAA Rules.

In addition, if the Court is barred from considering the AAA Rules, as Bazan-Garcia has argued in the Response, then Bazan-Garcia cannot rely on AAA

---

[3]     Bazan-Garcia attempts to flip the burden of proof by claiming that WRPS was required to show that arbitration "through an arbitration association other than the AAA, would be less expensive than an arbitration actually administered by AAA." Resp. at 28. This argument was squarely rejected in *Shasha*. Like Bazan-Garcia, Shasha argued that his evidence regarding how much AAA arbitration would cost was sufficient to meet his burden of proof, because the other party failed to counter that evidence by showing that non-AAA arbitration would be more affordable. The court of appeals disagreed, explaining that even though the other party could have prevailed by submitting such evidence, "such proof is not necessary for Shasha to be required to make a factual showing that the AAA would administer the arbitration." *Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 864 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Bazan-Garcia's argument is also contrary to *Olshan*, in which the Texas Supreme Court held that the party claiming arbitration would be prohibitively expensive has the burden of affirmatively proving that no cheaper arbitration alternatives were available under the parties' agreement. *See* 328 S.W.3d at 897 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 n.6 (2000)).

20

invoices to prove that arbitration under the Employee Handbook would be unconscionable.

The Texas Supreme Court's opinion in *Olshan* is instructive. Like Bazan-Garcia, the *Olshan* respondents claimed that arbitration would be prohibitively expensive, and as evidence submitted several arbitration invoices from allegedly "similar" AAA-administered arbitrations. 328 S.W.3d at 897. Rather than relying solely on these invoices, the Supreme Court examined the AAA Rules separately to determine, based on the rules' fee schedule and the amounts of the respondents' claims, "how much [respondents] will be charged under the AAA Rules." *Id.* Without that information, the Supreme Court explained, respondents could not meet their "burden to show the likelihood of incurring excessive costs." *Id.*

If Bazan-Garcia is correct and the AAA Rules cannot be considered by the Court in this appeal, then *Olshan* is clear: Bazan-Garcia cannot meet her heavy burden of proving that arbitration *governed by those rules* and fee schedule would be prohibitively excessive and unconscionable. *See Olshan*, 328 S.W.3d at 897. She therefore cannot avoid her arbitration obligations under the Employee Handbook.

**C. Bazan-Garcia cannot prove that the Employee Handbook's arbitration agreement is unconscionable because she has not shown that a less expensive arbitration alternative is unavailable to her.**

The Texas Supreme Court has intentionally set the bar high for holding that an arbitration agreement is unconscionable, and has explained that a party may not "avoid arbitration [by] assum[ing] the most expensive possible scenario." *Olshan*, 328 S.W.3d at 897. In *Olshan*, the Supreme Court explained that to meet this burden, the party resisting arbitration must also show that no cheaper alternative is available to the parties, such as by demonstrating it "made any effort to reduce the likely charges through requests for fee waivers, pro bono, arbitrators, or even simply requesting a one arbitrator panel." *Id.*

WRPS specifically discussed this requirement in its Opening Brief and pointed out that Bazan-Garcia had failed to make such a showing. *See* Opening Br. at 25. In her response, Bazan-Garcia discusses *Olshan*, but conspicuously omits any mention of this requirement. *See* Resp. at 27–30. For this additional reason, Bazan-Garcia cannot prove that arbitrating her claims against WRPS under the Employee Handbook would be unconscionable.

**D. Bazan-Garcia cannot prove that arbitration under the Arbitration Agreement is unconscionable because she has not presented any evidence showing how much it would cost to travel to Dallas County.**

Bazan-Garcia also claims that arbitration under the Arbitration Agreement would be unconscionable, on the grounds that she cannot afford the costs of travel and lodging in Dallas County. *See* Resp. at 24–25. In support of this claim, Bazan-Garcia submitted an affidavit stating that "if it is determined that I must bring my lawsuit against my employer in Dallas County, Texas, I will incur substantial additional expenses in travel and lodging, and I will probably not continue with my claim." CR 96.

As explained in Section II.C above, this conclusory statement is inadequate to prove that the Arbitration Agreement is unconscionable. *See supra* at 14–15 (discussing *Green Tree*, 531 U.S. at 90 n.6 (holding that plaintiff's testimony "that [a]rbitration costs are high and that she did not have to resources to arbitrate" was inadequate to prove unconscionability)). For example, Bazan-Garcia does not indicate the amount of those "substantial" expenses, identify what type of transportation she would use to get to Dallas County, state how long she would have to stay, or show that no cheaper alternatives are available to her. Without this basic information, this Court cannot find that arbitration pursuant to the Arbitration Agreement would be prohibitively expensive, or allow Bazan-Garcia to escape her bargain with WRPS.

**V.  The challenged provisions do not constitute the "essential purpose" of the parties' agreements, and may be severed from the agreements.**

Finally, if this Court concludes that any of the challenged provisions in the Employee Handbook or Arbitration Agreement is unconscionable, then it must sever that provision and enforce the remainder of the parties' agreement.  The Court can only decline to do so if it concludes that the unconscionable provision constitutes the arbitration agreement's "essential purpose." *See* Opening Br. at 32–33 (discussing *Poly-America*, 262 S.W.3d at 360; *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014)).  In her Response, Bazan-Garcia contends that the three challenged provisions are "integral" to the parties' arbitration agreements because (1) the agreements do not contain a severability clause, *see* Resp. at 40 (citing *Poly-America*, 262 S.W.3d at 360), and (2) WRPS did not request severance from the trial court, *see* Resp. at 40–41.

First, "[i]n determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'"  *Venture Cotton*, 435 S.W.3d at 230 (quoting *Poly-America*, 262 S.W.3d at 360).  WRPS and Bazan-Garcia's incorporation of the AAA Rules in both the Arbitration Agreement and the Employee Handbook demonstrate that none of the provisions challenged by Bazan-Garcia were "essential" to those agreements.  The AAA Rules not only supersede the challenged provisions, they also give the arbitrator power to modify or remove

24

them.  *See* AAA Rule 1 (App. 28).  If these particular provisions were "essential" to the agreements, then it is highly unlikely the parties would have given the arbitrator such authority.

Second, and contrary to Bazan-Garcia's suggestion, the Texas Supreme Court has never held that the absence of a severability clause proves that all of the agreement's terms constitute its "essential purpose."  Instead, the Supreme Court expressly held in *Venture Cotton* that a court of appeals is *required* to sever an unconscionable provision from an arbitration agreement even when the agreement has no severability clause, and even when that remedy was not requested from the trial court.  435 S.W.3d at 230 (discussed in Opening Br. at 32).  Consequently, if this Court concludes that any provision in the parties' arbitration agreements is unenforceable, then it must sever that provision and enforce the remainder of the agreements.

**CONCLUSION AND PRAYER FOR RELIEF**

For the reasons set forth above, WRPS respectfully requests the Court reverse the trial court's Order denying WRPS's motion to compel arbitration, and direct the trial court to compel arbitration of all of Bazan-Garcia's claims and abate this litigation.

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: */s/ Jennifer M. Trulock*
 Jennifer M. Trulock
 State Bar No. 90001515
 2001 Ross Avenue, Suite 600
 Dallas, Texas 75201
 (214) 953-6500  Telephone
 (214) 953-6503  Facsimile
 jennifer.trulock@bakerbotts.com

 Stephanie F. Cagniart
 State Bar No. 24079786
 98 San Jacinto Boulevard, Suite 1500
 Austin, Texas 78701-4078
 (512) 322-2500  Telephone
 (512) 322-2501  Facsimile
 stephanie.cagniart@bakerbotts.com

**ATTORNEYS FOR APPELLANT
WESTERN RIM PROPERTY
SERVICES, INC.**

26

## Certificate of Compliance

This brief complies with the type-volume limitations of Tex. R. App. P. 9.4, as it contains 5,861 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

*/s/ Stephanie F. Cagniart*
Stephanie F. Cagniart

## Certificate of Service

I hereby certify that on February 9, 2015, a copy of the foregoing was served by the Court's CM/ECF electronic service and by electronic mail on the following parties:

Javier Espinoza
Josue F. Garza
The Espinoza Law Firm, PLLC
503 E. Ramsey, Ste. 103
San Antonio, Texas 78216
210-229-1302 (Facsimile)
josue@espinozafirm.com

*/s/ Stephanie F. Cagniart*
Stephanie F. Cagniart