**Reversed and Remanded and Memorandum Opinion filed July 7, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00926-CV

---

## CHARLES F. HERD, JR.; HERD LAW FIRM, PLLC; W. MARK LANIER; AND THE LANIER LAW FIRM, P.C., Appellants

### V.

## SHERI  ALLEN  DORGAN A/K/A SHERI DORGAN ALLEN, Appellee

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2019-31827**

---

### MEMORANDUM  OPINION

In this interlocutory appeal, appellants Charles F. Herd, Jr. and Herd Law Firm, PLLC (Herd Appellants) and W. Mark Lanier and The Lanier Law Firm, P.C. (Lanier Appellants) raise a single issue on review: the trial court abused its discretion in denying their motions to compel arbitration because there was a legally binding and enforceable arbitration agreement with respect to the claims at issue in the case and appellee did not prove any valid defenses.  We reverse.

I.     BACKGROUND

## A.     Agreements Between Appellee and Appellants

Appellee Sheri Allen Dorgan was allegedly injured and suffered significant injuries and damages as a result of the BP Deepwater Horizon oil-well leak.  In 2014, appellee hired the Lanier Appellants to represent her in her personal injury action and signed a Power of Attorney and Contingent Fee Contract (Lanier Agreement).  The Lanier Agreement indicates that appellee retained the Lanier Appellants to "prosecute claims against BP Oil Spill . . . arising from the legal injury of [appellee]."  The Lanier Agreement contains an arbitration clause. Appellant Charles Herd was an attorney working on appellee's case at the Lanier Law Firm and signed the Lanier Agreement for the Lanier Firm.  The Lanier Appellants represented appellee in federal court in Louisiana (Oil Spill Case). *Dorgan v. BP, P.L.C.*, No. 17-CV-03367 (E.D. La.), No. 19-30440 (5th Cir.).

In August 2018, Herd left the Lanier Law Firm and started the Herd Law Firm.  The Lanier Law Firm sent a letter to appellee indicating Herd's departure and that both the Lanier Law Firm and Herd would like to continue representing appellee and work on the Oil Spill Case together.  Attached to the letter was a document titled "Consent to Refer."[1]  The Consent to Refer indicated that both the Herd Law Firm and Lanier Law Firm would "assume joint responsibility for the representation of" appellee.

In November 2018, appellee executed a Power of Attorney and Contingent Fee Contract with the Herd Appellants (Herd Agreement).  The Herd Agreement indicates that appellee retained the Herd Appellants "to assume the role of counsel

---

[1] The Consent to Refer attached to appellee's response to appellants' motion to compel arbitration was unexecuted.  Appellee indicated in her affidavit that she "understood that the new agreement with Herd, along with the consent to refer, now governed."

for the prosecution and trial of claims against _____ arising from the legal injury of [appellee], individually and on behalf of the Estate of [appellee's husband], Deceased, and to recover all compensation and other benefits to which [appellee] may be entitled, as well as to compromise and settle any and all claims arising out of the wrongful death of [appellee's husband]."[2]  The Herd Agreement does not contain an arbitration clause but instead agrees to first try to mediate any disputes.  If mediation is unsuccessful, either party may file suit in Harris County, Texas.

It is undisputed that both the Lanier Appellants and the Herd Appellants continued to represent appellee in the Oil Spill Case after Herd left the Lanier Law Firm.  Appellee attests that she consented to the joint representation.

## B.    The Oil Spill Case

In the Oil Spill Case, the court ordered appellee to file a "particularized statement of claim" on or before July 9, 2018.  It is undisputed that appellee's claim was not filed by this date.  In August 2018, the court rendered a "show cause" order.  The show cause order gave appellee until October 11, 2018 to "show cause" why her claims should not be dismissed for missing the July deadline.  Appellee's counsel filed a response.[3]  However, the court did not find the reason for missing the deadline sufficient and dismissed the Oil Spill Case with prejudice.

**Appellee's Lawsuit Against Appellants**

In May 2019, appellee filed suit against appellants alleging that due to their negligence and gross negligence, appellee's claims in the Oil Spill case were dismissed with prejudice.  The Lanier Appellants filed a Motion to Abate and Compel Arbitration, and the Herd Appellants joined.  Appellee filed a response,

---

[2] There is a blank line in this clause.

[3] It is not clear from the record who filed the response in the Oil Spill Case.

3

attaching exhibits and her affidavit. The trial court denied the motion to abate and compel arbitration. This interlocutory appeal followed.

## II.    MOTION TO COMPEL ARBITRATION

Appellants argue that the trial court abused its discretion in denying their motions to compel arbitration because: (1) there was a legally binding and enforceable arbitration agreement with respect to the claims at issue in the case; and (2) appellee did not prove any valid defenses. Appellee responds that the Herd Agreement did not contain an arbitration clause and superseded the Lanier Agreement. Appellee also contends the trial court correctly declined to compel arbitration because appellee demonstrated that the arbitration provision was unconscionable.

## A.    General Legal Principles

A party seeking to compel arbitration bears the burden to establish that an arbitration agreement exists and that the claims presented fall within its scope. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Nationwide Coin & Bullion Reserve, Inc. v. Thomas*, 625 S.W.3d 498, 503 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). If this burden is met, then the burden shifts to the party opposing arbitration to prove an affirmative defense to the provision's enforcement, such as unconscionability, to avoid arbitration. *See Henry*, 625 S.W.3d at 115. "If there is conflicting evidence as to the material facts necessary to determine the issues, the trial court is to conduct an evidentiary hearing to resolve the dispute." *Thomas*, 625 S.W.3d at 503.

When a motion to compel arbitration is denied, we apply an abuse-of-discretion standard. *Id*. We defer to the trial court's factual determinations if they are supported by the evidence and review the legal determinations de novo. *Id*.

Whether a valid arbitration agreement exists is a legal question. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). "In interpreting the parties' agreement, we apply ordinary contract principles." *Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist.] 2013, no pet.). We consider and examine the entire writing to try to harmonize and give effect to all provisions of the contract so none will be rendered meaningless. *Id.* "[A]n arbitration clause that includes all 'disputes,' and not just claims, is very broad and encompasses more than claims 'based solely on rights originating exclusively from the contract.'" *Henry*, 551 S.W.3d at 115–16 (quoting *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017)). An agreement to supersede or revoke a prior arbitration provision must do so in unequivocal terms such that the subsequent agreement cannot be harmonized with the arbitration provision. *Valerus Compression Servs.*, 417 S.W.3d at 210; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

## B.    Is there an Enforceable Arbitration Provision?

Appellants first argue that there is an enforceable arbitration agreement and that appellee's claims fall within its scope. Appellee does not dispute that she entered into the Lanier Agreement and does not argue that the claims she asserts are outside of the scope of the arbitration provision. Instead of challenging the Lanier Agreement directly, appellee argues that a later agreement between herself and another law firm superseded the Lanier Agreement.[4]

The Lanier Appellants attached the Lanier Agreement to their motion to compel arbitration and supported it by affidavit. Under the Purpose of

---

[4] Appellee's only direct challenge to the Lanier Agreement is that the arbitration provision is unconscionable. Because unconscionability is a defense to arbitration, this challenge is addressed below.

5

Representation heading, the Lanier Agreement provides that "Client hereby retains and employs the Lanier Law Firm to prosecute claims against BP Oil Spill . . . airing from the legal injury of Client (the "Case") and to recover compensation to which Client may be entitled." The arbitration provision provides that "[a]ny and all disputes, controversies, claims or demands arising out of or relating to this Agreement or any provision hereof, the providing of services by Attorneys to Client, or in any way relating to the relationship between Attorneys and Client . . . shall be resolved by binding arbitration." Both appellee and the Lanier Appellants executed the Lanier Agreement.[5] The Lanier Appellants' uncontroverted evidence established the existence of an arbitration agreement.

## C.      Are Appellee's Claims Within the Scope?

The "scope of an arbitration clause that includes all 'disputes,' and not just claims, is very broad and encompasses more than claims "based solely on rights originating exclusively from the contract." *Henry*, 551 S.W.3d at 115–16 (citing *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017)). "Doubts regarding an agreement's *scope* are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). We focus on the factual allegations in determining whether the claims made are within the scope of the arbitration agreement. *Henry*, 551 S.W.3d at 115.

Appellee's suit against appellants alleges that appellants failed to "address at

---

[5] The signatory for the Lanier Law Firm in the Lanier Agreement was Herd. The Herd Appellants joined in the motion to compel arbitration and adopt the position that they are subject to the terms of the arbitration provision within the Lanier Agreement for the claims asserted against them in this suit—"this places all claims against the Herd Defendants within the broad scope of the Arbitration Provision . . . ." Further the Herd Appellants "have voluntarily agreed to participate in arbitration." *See Taylor Morrison of Tex., Inc. v. Skufca*, No. 01-20-00638-CV, 2021 WL 6138979, at *16 (Tex. App.—Houston [1st Dist.] Dec. 30, 2021, no pet.) (party can moot unconscionability issue through agreement).

least three orders" in the Oil Spill Case. These failures led to the judge issuing a "show cause order on August 20, 2018 wherein he required plaintiffs like [appellee] to 'show cause in writing on or before October 11, 2018 why this Court should not dismiss'" her claims with prejudice.[6]  Appellee alleged that because appellants failed to "timely respond to this show cause order" appellee's Oil Spill Case was dismissed with prejudice.  Appellee asserted causes of action for negligence and gross negligence against appellants because in the Oil Spill Case appellants failed to (1) protect appellee's interest; (2) properly represent appellee; (3) diligently represent appellee; and (4) follow court orders.

Given the broad language of the arbitration provision and that the claims asserted by appellee in the trial court arise from and are related to appellants' representation in the Oil Spill Case, we conclude they are within the scope of the arbitration provision. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (presumption favoring arbitration "is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990))).

**D.    Was the Lanier Agreement Superseded by the Herd Agreement?**

Appellants argue that because the Lanier Appellants are not parties to the Herd Agreement, and it did not supersede or revoke the Lanier Agreement in "unequivocal" terms, appellee has failed to prove this defense to the arbitration

---

[6] Appellee does not state in her petition what three orders were unaddressed or the dates on which these failures occurred.  However, appellants' alleged failures to address the court's orders resulted in a "show cause order" on August 20, 2018—only twenty days after Herd left the Lanier Law Firm and approximately three months prior to appellee's execution of the Herd Agreement in November 2018

provision.  Appellants further argue that the two agreements can be harmonized.

Appellee argues that the Herd Agreement superseded the Lanier Agreement, and because the Herd Agreement does not contain an arbitration provision, she cannot be compelled to arbitrate.  It is undisputed that the Lanier Appellants did not execute the Herd Agreement.  Appellee's argument is based on three rationales.  First appellee argues the Herd Agreement represents that it is the "sole and only" agreement between the "parties."  Second appellee argues the Lanier Appellants are bound as appellee's "legal representatives, successors and assigns." Third appellee argues the Lanier Appellants are third-party beneficiaries under the Herd Agreement.

### 1. "Sole and Only" Agreement

Under the heading "Prior Agreements Superseded" the Herd Agreement states: "This Agreement constitutes the sole and only Agreement of the parties hereto.  It supersedes any prior understandings (written or oral) between the parties respecting the subject matter of this Agreement."  Appellee argues that the "subject matter" includes how any "disputes, controversies, claims or demands arising out of or relating to . . . the providing of services by Attorneys to Client, or in any way relating to the relationship between Attorneys and Client" would be handled.

How disputes are handled between the parties to the agreement is not the "subject matter" of the agreement itself; it is a mechanism to provide for potential disputes that may arise during their course of dealing regarding the subject matter. The subject matter of the agreement is more properly considered to be the reason the parties are entering into a contract or what they are exchanging.  *See Black's Law Dictionary* (11th Ed. 2019) ("subject matter 1. The issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute.").  In the Herd Agreement, appellee provides a percentage of her interest,

8

both individually and on behalf of the estate of her husband, in any legal damages or compensation to the Herd Appellants in exchange for their prosecution of those claims. Thus, the Herd Agreement only "supersedes any prior understandings" respecting this specific subject matter.[7]

Appellee proffers that the language "[t]his Agreement constitutes the sole and only Agreement of the parties hereto" renders the Lanier Agreement defunct. However, there is a reading of this sentence that would harmonize the two agreements—that the term "the parties hereto" means only the signatories to the Herd Agreement. *See Valerus Compression Servs.*, 417 S.W.3d at 210 (an agreement to supersede or revoke a prior arbitration provision must do so in unequivocal terms such that the subsequent agreement cannot be harmonized with the arbitration provision.); *see also Webster*, 128 S.W.3d at 227. Such a reading, particularly when taken in the context of the sentence following it, would harmonize the Herd and Lanier Agreements. *See McMahan v. Greenwood*, 108 S.W.3d 467, 491 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[I]n construing a written contract, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.").

### 2. **"Legal Representatives, Successors and Assigns"**

---

[7] Appellee argues that the "Purpose of Representation" contained a blank line that was not completed, and because of this, she provided parol evidence "to the extent necessary to remove any ambiguity or complete the contract's terms." Appellee then testified only that the Herd Agreement "replaced the one that [she] signed with the Lanier firm" and that she "was told that the Herd agreement superseded" the Lanier Agreement. This testimony is conclusory and regards appellee's subjective belief, it does not provide evidence of what should have been on the blank line in the Herd Agreement. *See Olivares v. Brown & Gay Eng'g, Inc.*, 401 S.W.3d 363, 372 & n.7 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 461 S.W.3d 117 (Tex. 2015) ("Conclusory affidavit testimony is substantively defective, is not sufficient to raise fact issues, and amounts to no evidence.").

Appellants also argue that the Herd Agreement could not have superseded the Lanier agreement because the Lanier Appellants did not sign the Herd Agreement. Appellee acknowledges that the Lanier Appellants did not execute the Herd Agreement but argues that the Lanier Appellants are bound as appellee's "legal representatives, successors and assigns." Appellee argues that the Lanier Appellants are her "legal representatives" because she testified that they were her legal representatives and because they filed legal pleadings on her behalf after the Herd Agreement was signed.

First, there is no evidence that the Lanier Appellants knew about the Herd Agreement and then filed legal pleadings on appellee's behalf. Second, appellee's testimony that she "still considered Lanier my attorneys jointly with Herd" does not explain why or how the Lanier Appellants are considered "legal representatives" under the terms of the Herd Agreement. *See Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 62 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Our primary concern in interpreting a contract is to ascertain and give effect to the intentions of the parties as expressed in the instrument. We therefore give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning."). There is also no evidence or argument that the term "legal representative," undefined in the Herd Agreement, means or includes the Lanier Appellants. *See McMahan*, 108 S.W.3d at 490 ("Our research reveals that a majority of courts, when confronted with the issue of whether an attorney falls within the definition of the term 'legal representatives,' have rejected the argument . . . ."). In the Herd Agreement, the "Parties Bound" provision states that "This Agreement shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by applicable law, their respective heirs, executors, administrators, legal representatives, successors and assigns." Because

10

the term "legal representatives" occurs in a phrase which includes various entities which contemplate prospective parties or holders of an interest in an action, rather than agents or those engaged in the practice of law, it seems "more likely that the [contract] was referring to some sort of legal party substitute" rather than appellee's attorneys or the Lanier Appellants.[8] *See McMahan*, 108 S.W.3d at 491.

### 3. **Third-Party Beneficiary**

Appellee next argues that the Lanier Appellants are considered third-party beneficiaries under the Herd Agreement because it "conferred benefits" on the Lanier Appellants. Appellee contends that because the Herd Agreement allowed the Herd Appellants to associate additional lawyers to assist in representing appellee, that although not specifically named in the Herd Agreement, it is referring to the Lanier Appellants as third-party beneficiaries.

A court cannot create a third-party beneficiary by implication. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). The presumption is that the parties to an agreement contracted only for themselves. *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). We resolve all doubts against conferring third-party beneficiary status. *Tawes*, 340 S.W.3d at 425.

The provision does not, in and of itself, confer any benefit upon the Lanier Appellants. The "Referral or Association of Additional Counsel" provision provides that "Client agrees that Attorneys may refer this matter to another lawyer or lawyers or associate one or more additional lawyers to assist in representing Client and prosecuting Case[;] Prior to any such referral or association, Client shall consent in writing to the terms of the agreement. . . ." The provision provides three disclosures that must be made and approved by the client prior to the association or

---

[8] Further, the parties could have easily and specifically named the Lanier Appellants in the Herd Agreement but did not do so.

referral being made. Under the terms of the Herd Agreement, if such a referral is made, then an associating lawyer or firm may become entitled to share in the fee recovery provided by the Herd Agreement. However, no such benefit is conferred until a referral, agreed to by appellee, is made.

Appellee attached a Consent to Refer agreement, sent to her by the Lanier Appellants, to her response.[9] In her affidavit attached to her response, appellee attested that she "understood that the new agreement with Herd, along with the consent to refer, now governed instead of the Lanier agreement and considered the Lanier agreement, and its arbitration provision, void."

> The Consent to Refer Agreement states:
>
> Sheri Allen Dorgan ("Client") has previously executed a Contingent fee Agreement (the Agreement) retaining The Lanier Law Firm, P.C. ("Referring Attorney") to represent Client in regard to certain matters and/or causes of action identified in the Agreement. The Agreement also provides that Referring Attorney, with Client's written consent may refer the Client's matter to another attorney to prosecute the Client's cause of action.
>
> Referring Attorney has recommended that the Client's matter be referred to the Herd Law Firm to represent Client and to prosecute [her] causes of action. Client agrees that Referring Attorney may refer [her] matter to Associated Counsel to the Herd Law Firm to prosecute Client's cause of action. It is further understood that:
>
> . . .
>
> c.     if a recovery is made on behalf of Client, the total attorneys fees as conveyed in the Agreement will be divided as follows:

The Consent to Refer does not mention the Herd Agreement, but instead references the Lanier Agreement and the terms thereof, including the "total fees as conveyed

<hr>

[9] Appellee also attached a letter from the Lanier Appellants dated August 3, 2018, which enclosed the Consent to Refer agreement. The letter and Consent to Refer were sent to appellee more than two months before the Herd Agreement was executed. Appellee did not testify as to when she agreed to the Consent to Refer and did not provide an executed copy.

12

in the Agreement." Thus, even when considering the unexecuted Consent to Refer, it makes no mention of the Herd Agreement and fails to confer any benefit of the Herd Agreement upon the Lanier Appellants. As a result, appellee has failed to overcome the presumption that the parties only contracted for themselves, and we resolve all doubts against conferring third-party beneficiary status. *See Williams*, 353 S.W.3d at 145; *Tawes*, 340 S.W.3d at 425.

### 4. Conclusion

To supersede or revoke an earlier arbitration provision, the agreement must do so in unequivocal terms. *See Valerus Compression Servs.*, 417 S.W.3d at 210. We agree with appellants that appellee has not shown that the Herd Agreement clearly and unequivocally revoked or superseded the Lanier Agreement and the arbitration provision therein. We conclude that under the facts, circumstances, and evidence presented herein the Herd and Lanier Agreements can be read harmoniously, and that the arbitration provision was not superseded or revoked.

**E. Does the Arbitration Provision Render the Lanier Agreement Unconscionable?**

Appellants argue that appellee failed to show the expected or likely costs of arbitration because appellee only provided evidence of potential costs charged by the AAA and the arbitration provision does not require that arbitration be conducted with the AAA. The Herd Appellants also assert that the agreement is not unduly burdensome because appellee would not be forced to bring her claims in two separate forums since the Herd Appellants have agreed to arbitration. Appellee responds that the arbitration provision renders the Lanier Agreement unconscionable because her evidence showed that her financial state prevented her from effectively vindicating her rights through arbitration, the "expected" or

"likely" high costs of arbitration, and that arbitration would be substantially more expensive than litigation for her claims.

Unconscionable contracts are unenforceable. *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). Texas law recognizes both substantive and procedural unconscionability. *Id*. "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex. 2006). Because appellee complains of the prohibitive cost of arbitration, appellee's claim is grounded in substantive unconscionability. *See Olshan*, 328 S.W.3d at 892.

"Generally, a contract is unconscionable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Id*. (quoting *In re FirstMerit Bank*, 52 S.W.3d 749 (Tex. 2001)). "[A]n arbitration agreement may render a contract unconscionable if 'the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [his or her] federal statutory rights in the arbitral forum.'" *Id*. (quoting *Green-Tree Fin Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000)); *see also First Merit Bank*, 52 S.W.3d at 756.

The party opposing the arbitration bears the burden to show that the costs of arbitration render it unconscionable. *Olshan*, 328 S.W.3d at 893. When "a party seeks to invalidate an arbitration agreement on the grounds that it would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. Some evidence that a complaining party will likely incur arbitration costs in such an amount as to deter

14

enforcement of statutory rights in the arbitral forum is required. *Olshan*, 328 S.W.3d at 893; *see also Green Tree*, 531 U.S. at 92 ("[P]arty seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears burden of showing the likelihood of incurring such costs."). "Evidence of the 'risk' of possible costs of arbitration is insufficient evidence of the prohibitive cost of the arbitration forum." *Olshan*, 328 S.W.3d at 895. To be sufficient, the evidence must show that appellee is likely to be charged excessive arbitration fees. *See id.*

Where the party resisting arbitration cited the American Arbitration Association (AAA) costs but provided no evidence that the AAA would conduct the arbitration or charge her the fees she identified, the Supreme Court deemed such evidence insufficient to defeat arbitration. *Green Tree*, 531 U.S. at 522 & n.6. Similarly, the Texas Supreme Court held evidence of AAA costs and fees insufficient where there was no evidence that the AAA would actually conduct the arbitration and the provision did not require arbitration with the AAA. *FirstMerit Bank*, 52 S.W.3d at 757.

Even crediting all of appellee's evidence in favor of the trial court's finding,[10] appellee has failed to show that she will actually be charged excessive

---

[10] Appellee presented evidence that she has been unable to work and without income since May 2010. Her husband was employed and supported her since that time, but he died in 2018. At the time of his death, appellee had between $12,000 and $14,000 in savings, but most of that money was used toward funeral expenses. All remaining money was used toward appellee's living expenses. After the oil spill, appellee's home lost significant value. She was forced to sell her home and only retained $5,000 from the sale. Appellee's only income since her husband's death has been loans or advances on the Oil Spill Case. In 2019, appellee obtained two loans totaling $20,000, and she has used this money toward living expenses. Appellee has no other income and is not yet on disability. Between March and May 2019, appellee lived in her car because she had no place to live and no way to pay rent. After obtaining her first loan in 2019, she rented an apartment for $1,300 per month. Appellee's total living expenses are approximately $1,886 per month. Appellee testified that her current loan amounts would run out in a matter of months based on her current expenses. Appellee also presented

arbitration fees, that she is likely to be charged such fees, or that the AAA will actually conduct the arbitration. *See FirstMerit Bank*, 52 S.W.3d at 757; *Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 864 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 797 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Though appellee provided evidence of the high potential costs of arbitrating with the AAA, these projections are based on the premise that the AAA would administer the arbitration. However, the arbitration provision in the Lanier Agreement does not require that the AAA conduct or administer the arbitration. Rather, the provision states that arbitration shall be "in accordance with the Commercial Arbitration Rules then in effect with the [AAA]." *See Shasha*, 253 S.W.3d at 864 (arbitration provision required that arbitration be conducted "in accordance with the [Commercial Rules]."); *Brooks*, 225 S.W.3d at 797 (arbitration provision at issue required "arbitration in accordance with the Construction Industry Arbitration Rules of the [AAA] promulgated by the [AAA]."). We have previously held that "[u]nder this language, the AAA may administer the arbitration, but the parties are not required to have the arbitration administered by the AAA." *See Shasha*, 253 S.W.3d at 864; *Brooks*, 225 S.W.3d at 797.

Appellee argues that the Lanier Agreement requires that the arbitration take place with the AAA because the arbitration clause binds the parties to arbitrate under the AAA's commercial arbitration rules. Appellee then argues that the AAA rules require arbitrations with the AAA, referencing rule R-2:

> When parties agree to arbitrate under these rules . . . they thereby authorize the AAA to administer the arbitration. . . . Arbitrations

---

expert testimony about the likely costs of arbitrating her case with the AAA.

16

administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

Appellee argues that rule R-2 mandates arbitration with the AAA ("shall only be administered by the AAA"), and because appellee has provided uncontroverted evidence of the costs associated with arbitrating her case with the AAA, she has shown the likely costs she will incur in arbitration. However, this argument ignores the rule's plain language, which allows arbitrations to be administered "by an individual or organization authorized by the AAA to do so." Because the rule allows other "authorized" persons and organizations to conduct the arbitration, the parties are not required to arbitrate with the AAA.

Appellee further argues that *Brooks* is distinguishable because there was evidence that the party seeking to compel arbitration had arbitrated under the same provision outside of the AAA at a much lower cost. However, in *Shasha*, we held that "[a]lthough the party seeking to compel arbitration in [*Brooks*] presented evidence that arbitration under the same arbitration provision was available by a non-AAA arbitrator at a cost significantly lower that the costs of a AAA arbitration, such proof is not necessary for Shasha to be required to make a factual showing that the AAA would administer the arbitration." *Shasha*, 253 S.W.3d at 864; *see also Green Tree*, 531 U.S. at 92 ("The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs."); *FirstMerit Bank*, 52 S.W.3d at 756 ("[N]o evidence that the AAA would actually conduct the arbitration *or* charge the specified fees. The Arbitration Addendum does not state that the AAA will conduct the arbitration, and it makes no mention of arbitration costs." (emphasis added)).

Because the arbitration provision does not mandate arbitration with the

AAA, appellee has failed to show that the evidenced fees are likely to be incurred. *See In re FirstMerit Bank*, 52 S.W.3d at 756.[11]  There is no evidence of what any "individual or organization authorized by the AAA" to conduct an arbitration would cost and what appellee's portion of such fees would be.  As a result, "the 'risk' that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree*, 531 U.S. at 91.

We sustain appellants' sole issue on appeal.

### III.  CONCLUSION

Because the parties' arbitration agreement was enforceable, not superseded, the claims asserted were within the scope of the provision, and appellee did not meet her burden to prove unconscionability, , we hold that the trial court abused its discretion by denying Appellants' motion to compel arbitration.  Accordingly, we reverse the trial court's order and remand to the trial court for further proceedings limited to compelling the parties to submit to arbitration and other actions necessary to conclude the trial-court proceedings.


/s/     Ken Wise
Justice


Panel consists of Justices Wise, Bourliot, and Spain.

---

[11] Appellee argues that *In re FirstMerit Bank* is distinguishable because the arbitration clause at issue therein did not "incorporate the AAA commercial rules."  52 S.W.3d at 747.  This may be so, however, even under the incorporated rules appellee is not required to arbitrate with the AAA.

18